**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br><br>　　v.<br><br>JERRY FOZZARD, *et al.*,<br>　　　　Defendants.<br>_____<br><br>THE GALLERIA PROPERTY OWNERS<br>ASSOCIATION, INC.,<br>　　　　Counter Claimant,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br>　　　　Counter Defendant.<br>_____<br><br>THE GALLERIA PROPERTY OWNERS<br>ASSOCIATION, INC.,<br>　　　　Cross Claimant,<br><br>　　v.<br><br>JP MORGAN CHASE BANK, NA, *et al.*,<br>　　　　Cross Defendants. | ) <br> ) <br> ) <br> ) CAUSE NO.: 2:16-CV-543-JVB-JPK<br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**OPINION AND ORDER**

　　This matter is before the Court on a Motion to Set Damages Hearing [DE 56] filed on March 4, 2020. The Court referred this matter to Magistrate Judge Joshua Kolar to hold the requested hearing and to give a report and recommendation under 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72-1. [DE 58, 97]. Judge Kolar issued his Report and Recommendation [DE 100] on May 9, 2022, in which he recommended that the Court grant the remaining relief requested in the Motion to Set Damages Hearing and enter judgment in

favor of Cross Claimant The Galleria Property Owners Association, Inc. (GPOA) and against Cross Defendant Jerry Fozzard in the amount of $77,799.13. Fozzard filed an objection on May 23, 2022. No other party filed an objection.

## FACTUAL AND PROCEDURAL BACKGROUND

No party objected to Judge Kolar's statement of the factual and procedural background of this case, which the Court adopts and repeats below with only small modifications.

In 2003, Jerry Fozzard purchased a condominium at 425 Joliet Street, Unit 312, Dyer, Indiana, for his medical staffing business, using a Small Business Administration loan. (DE 88 (2/5/21 Hearing Transcript), 27:18-28:22). By purchasing the unit, he became bound by GPOA's Declaration of Condominium, which obliged him to contribute to the upkeep of 425 Joliet Street and keep his own unit in a reasonable condition. (*See* DE 90 (1/20/21 Hearing Transcript), 18:24-19:9; GPOA Ex. 1). By 2008, Fozzard's business was failing due to issues with his health, and financial difficulties accelerated by the nationwide economic recession. He fell behind on loan payments to the Small Business Administration and fees to GPOA. (DE 88, 29:14-30:14). By 2014, he had effectively abandoned the business and the unit. *Id.* E-mails from GPOA's directors to Fozzard "bounced back," and GPOA was unable to reach him. *Id.* at 48:10-20. Meanwhile, the empty unit was leaking and growing mold. (DE 88, 93:19-94:13; DE 90, 47:1-15, 84:18-22, 98:25-99:9). In January 2015, GPOA concluded that the disrepair was becoming a safety hazard. GPOA "took possession" of the unit, changed the locks, paid for the unit to be professionally cleaned, and began paying utilities to stabilize the temperature and prevent further damage. *Id.*; (GPOA Ex. 4, 34-96). GPOA billed Fozzard for these expenses, and placed a lien on the unit, although it was unable to collect anything from Fozzard. *See* (GPOA Exs. 6, 11).

On December 29, 2016, the United States filed a Complaint to foreclose Fozzard's mortgage on the unit. The Complaint named GPOA as a defendant because of its junior lien. On April 11, 2017, GPOA filed a cross-claim, alleging breach of contract by Fozzard, and a counterclaim, requesting that its lien be foreclosed and that the proceeds of any sale of the property be applied to Fozzard's outstanding balance.

The parties attempted to reach a global settlement, which involved trying to assess the value of the property. One appraisal commissioned by Fozzard valued the unit at $155,000; another, arranged by the United States, valued it at $170,000. (Fozzard Exs. 1-2). In addition, in November 2017, Galleria Realty Corporation (GRC), an entity with the same directors as GPOA that developed the property at 425 Joliet and owns many of the units, offered Fozzard $160,000 for the property. (Fozzard Ex. 5). Fozzard did not respond to the offer because it was not enough to cover all his debts. (DE 88, 32:21-35:24; DE 90, 112:10-13).

In an agreed status report to the Court on March 15, 2019, the United States wrote: "The parties are endeavoring to submit an agreed judgment resolving this case and submit the same to the Court by April 15, 2019. . . . If the parties cannot agree to an agreed judgment, the plaintiff, United States of America, and the cross-claimant, Galleria Property Owners Association, Inc., shall file, respectively, motions for summary judgment by May 31, 2019." The Court ultimately set a deadline of June 10, 2019, for the parties to file an agreed judgment or a motion for summary judgment. In the meantime, GPOA continued to pursue settlement discussions with Fozzard, but no agreement was reached. *See* (DE 93 at 18-19 (GPOA's proposed agreed judgment sent on March 12; e-mail correspondence sent by counsel for GPOA on April 15, April 24, May 13, and May 31)).

On June 10, the United States filed a motion seeking entry of an agreed judgment between Fozzard and the United States only.[1] The motion was silent as to the status of GPOA's claim, and GPOA did not file a dispositive motion. On July 24, 2019, the Court entered the agreed judgment against Fozzard and for the United States in the amount of $172,537.88 plus interest and costs. The judgment specified that the property would be auctioned at a marshals' sale, with the proceeds distributed as follows: first, to pay the costs of the lawsuit; second, to the United States to satisfy its judgment; and the remainder, if any, to the Clerk of Court to be distributed later.

The sale was scheduled for October 30, 2019, and notice was placed in the Crown Point Star once per week for four consecutive weeks. (DE 52). Meanwhile, the United States had begun to recoup some of its judgment through other means, such as garnishing Fozzard's tax payments. *See* (Fozzard Ex. 4). By the time of the marshals' auction, Fozzard owed the United States only $19,697.47, although he did not share that information with GPOA. *See* (DE 85, ¶¶ 2-3).

On the auction day, Victor "Bud" DiMaggio, the vice president of GPOA and a "principal" of GRC, attended to bid on behalf of GRC. DiMaggio was the only prospective bidder to attend. The U.S. Marshals delayed the sale for a half hour to accommodate any bidders who were running late, but no one else arrived. DiMaggio testified that he made an opening bid of $1, and the United States bid "approximately $19,700.00," apparently to match the amount needed to satisfy its judgment. DiMaggio beat the government's bid, and won the auction on behalf of GRC with a final price of $19,697.46. (DE 54, 57; DE 90, 79:11-82:14). The marshal's report, filed after the auction, indicated that the "grantee" of the deed was GRC. (DE 52 at 2). The United States filed a motion to confirm the sale based on the marshal's report. (DE 54). No party objected, and the Court granted the motion and confirmed the sale. (DE 55).

---

[1] GPOA nonetheless consented to the agreed judgment. *See* (DE 46 at 2).

On March 4, 2020, GPOA filed its "Motion to Set Evidentiary Hearing on Damages." (DE 56). The motion sought "a judicial determination of the amount properly due and owing to GPOA together with an *in personum* [sic] and *in rem* judgment after an appropriate evidentiary Hearing." *Id.*, ¶ 8. The Court referred the motion to Judge Kolar, who set a hearing. In advance of the hearing, GPOA filed a statement of damages alleging that it had received "no remuneration" from the marshals' sale, and that Fozzard now owed GPOA $91,245.05[2] in unpaid assessments, attorney fees and interest. In response, Fozzard argued that the sale should be set aside because the result was unfair. Fozzard further argued that GPOA had not met its burden of proof to justify a judgment, and that DiMaggio "in bad faith usurped the corporate opportunity" of GPOA by bidding on behalf of GRC. In short, Fozzard argued that because GRC had won the property at an apparent discount, Fozzard should not have to pay the alleged debt to GPOA, which was supposed to come out of the sale proceeds. These arguments were extensively developed, and supporting evidence introduced, during the hearing held on January 20 and February 5, 2021. Supplemental briefing was filed after the hearing. Fozzard argued after the hearing that the Court could not enter judgment without dispositive motions or a trial, and Judge Kolar offered each party one final chance to offer any additional facts or argument as to liability, but both declined.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B), a judge may designate a magistrate judge to conduct hearings and submit proposed findings of fact and recommendations for disposition of dispositive motions. The court "may accept, reject, or modify, in whole or in part," the magistrate judge's report. *Id.* at § 636(b)(1). Parties have fourteen days after being served with the magistrate judge's report to file written objections to the proposed findings and recommendations. *Id.* "A judge of the

---

[2] GPOA's demand was subsequently revised to include further attorney's fees. (*See* GPOA Exs. 11, 12).

5

court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* Portions of the report to which there is no objection are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (citing *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995); *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

## JUDGE KOLAR'S REPORT AND FOZZARD'S OBJECTIONS

In his May 9, 2022 report, Judge Kolar found that the marshal's sale was not shocking to the conscience and should not be set aside, that equitable doctrines did not apply, and that the amount Fozzard owed GPOA is $77,799.13. Judge Kolar recommended that the Court enter judgment in that amount pursuant to Federal Rule of Civil Procedure 52(c).

Fozzard filed an objection accompanied by a memorandum of law on May 23, 2022. Fozzard objects to the finding that the marshal's sale was not shocking to the conscience and argues that GPOA's failure to obtain a cross-claim judgment before the marshal's sale enabled GRC to purchase the property for a low price that did not account for GPOA's crossclaim. Fozzard asserts that DiMaggio and GPOA received an inequitable windfall as a result.

Fozzard requests either that the marshal's sale be set aside and that a new marshal's sale be conducted that accounts for a $77,799.13 cross-claim judgment or that the marshal's sale be upheld but GPOA be deemed unable to recover any further amount from Fozzard due to the inequitable actions of DiMaggio and GPOA.

## ANALYSIS

### A. Shocking to the Conscience

Under Indiana law (which Judge Kolar applied to this matter without objection), "[w]here it appears that the results of a sale are such that entry of a deficiency judgment is shocking to the

court's sense of conscience and justice, the sale may be set aside or the request for a deficiency judgment denied." *Arnold v. Melvin R. Hall, Inc.*, 496 N.E.2d 63, 65 (Ind. 1986).

Fozzard maintains that the marshal's sale of the property for a price less than 15% of the appraised value shocks the conscience. However, "market value . . . has no applicability in the forced-sale context; indeed it is the very *antithesis* of forced-sale value. . . . '[F]air market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale." *BFP v. Res. Trust Corp.*, 511 U.S. 531, 537-38 (1994). In *Lomas & Nettleton CO. v. Wiseley*, the Seventh Circuit Court of Appeals determined that the proper comparison is between "the amount realized at the sale and the amount that could have been realized at a proper sale." 884 F.2d 965, 969 (7th Cir. 1989). Additionally, bidders should be able to rely on the results of judicial sales; if the auction is properly noticed and conducted, "[t]he sale, for all concerned, should be final." *Id.* at 970-71.

In his objection, Fozzard makes no assertion of what amount should have been realized at a proper marshal's sale, focusing instead on the irrelevant comparison of the sale price to market value. Fozzard agreed to a marshal's sale of the property. Consequently, he should not have expected the property to sell for market value. Fozzard also had the opportunity to object to the motion for confirmation of the marshal's sale, but he made no such objection.

The sale price itself is not so shocking that the sale must be set aside. On the evidence provided, there is no reason to doubt the integrity of the marshal's sale. Judge Kolar's description of the sale bears repeating:

> The sale price was lower than expected for two reasons: First, the United States had already recouped most of its judgment from Fozzard, so it was never going to bid more than $19,697.46. Second, and more importantly, DiMaggio was the only other bidder. That was not DiMaggio's fault—it was, most likely, the result of the property being sold at a forced sale. Whether he was representing GPOA, GRC, or someone else, the sale price would have been the same—one dollar more than the

7

>United States offered. Fozzard believes it was in GPOA's interest to bid, but that was GPOA's choice to make, not Fozzard's. There was no evidence indicating that DiMaggio subverted the wishes of GPOA's members by failing to buy property on its behalf. It was GRC, not GPOA, who made the original $160.000 offer for the unit; it is not surprising, nor "shocking to the court's conscience," that the property developer (GRC) was trying to purchase the unit, while the condo association (GPOA), representing the interests of all its unit owners, did not.

(Rep. & Recommendation, at 9, ECF No. 100). The Court overrules Fozzard's objection regarding the sale price of the property.

### B. Delay in Seeking Judgment

Fozzard argues that any attempt by GPOA to obtain a judgment against him should be rejected because GPOA did not pursue that remedy prior to the marshal's sale. As Judge Kolar identifies, this argument for equitable relief does not meet the criteria for laches, equitable estoppel, or unclean hands.

"Laches does not turn on time alone . . . prejudice or injury is necessary." *Hannum Wagle & Cline Eng'g, Inc. v. Am. Consulting, Inc.*, 64 N.E.3d 863, 879 (Ind. Ct. App. 2016). Even if judgment had been entered on the cross-claim prior to the marshal's sale, the Court fails to see how that would have driven either bidder (the United States or DiMaggio) to increase their bid. That is, Fozzard has not shown that he has been injured by the delay in seeking judgment. He cannot (and does not) in good faith argue that he was unaware that GPOA was seeking to recover damages from Fozzard; he responded to the cross-claim against him on May 23, 2017. Without injury to Fozzard, laches provides no relief.

Fozzard cannot win on equitable estoppel, which would require Fozzard to show that he relied on GPOA's conduct to act in a way that changed his position prejudicially. *See Town of New Chicago v. City of Lake Station ex rel. Lake Station Sanitary Dist.*, 939 N.E.2d 638, 653 (Ind. Ct. App. 2010). As discussed above, if GPOA had sought and received an entry of judgment in its favor prior to the marshal's sale, there is no reason to believe that either bidder would have made

a bid higher than the winning bid that, in fact, was made. Fozzard has not established that he relied on the lack of judgment against GPOA in a manner that prejudiced him. The Court will not find GPOA equitably estopped from pursuing judgment against Fozzard.

In addition to being "not favored and . . . applied with reluctance and scrutiny," the doctrine of unclean hands only applies if there is intentional misconduct. *Wedgewood Cmty. Ass'n, Inc. v. Nash*, 781 N.E.2d 1172, 1178 (Ind. Ct. App. 2003). Certainly, GPOA did not move for entry of judgment according to Fozzard's preferred (when viewed in retrospect) timeline, but the Court sees no misconduct here, much less intentional misconduct, so Fozzard does not prevail.

### C. GPOA's Lack of Bid

Fozzard posits that GPOA should have obtained a judgment against him prior to the marshal's sale, placed a bid on the property for the amount of its judgment plus the outstanding debt owed on the judgment to the United States, and then sold the property to GRC for the $160,000 which GRC had offered to Fozzard for the property nearly two years earlier.

Perhaps GPOA may have been able to realize a profit if it undertook these actions, but the Court sees no reason to find that GPOA had a duty to act in this manner. By not bidding on the property, GPOA accepted the risk that it may never recoup damages from Fozzard, as not all judgments that are entered are ultimately paid by the debtors. By bidding on the property, GPOA would have accepted the risk that it may not be able to find a buyer for the property or that the property would not yield a sale price sufficient to cover GPOA's damages. The Court sees no reason to impose on GPOA the duty to accept one of these risks over the other.

### D. Windfall to GPOA

Fozzard argues that Judge Kolar's recommendation gives a windfall to GPOA because GRC purchased the property at a greatly reduced cost and GPOA also gets an award. Though the

evidence shows that GRC and GPOA have the same directors, the entities are not the same. GRC may be the beneficiary of buying (at a fairly conducted marshal's sale) a piece of property at a discounted price, but this does not alter the fact that GPOA has incurred damages through Fozzard's breach of the contract between him and GPOA. A judgment that awards damages to GPOA to make it whole is not a windfall. It is justice.

### E. Matters to Which There is No Objection

The Court has reviewed the remainder of Judge Kolar's Report and Recommendation, including the calculation of damages, and finds no clear error.

### CONCLUSION

Therefore, the Court hereby **OVERRULES** Defendant's Objection [DE 101], **ADOPTS** the Findings, Report and Recommendation of United States Magistrate Judge Pursuant to 28 U.S.C. § 636(b)(1)(B) & (C) [DE 100], **GRANTS** the remaining relief requested in the Motion to Set Damages Hearing [DE 56], and **ENTERS JUDGMENT** in favor of The Galleria Property Owners Association, Inc. and against Jerry Fozzard in the amount of $77,799.13. This resolves the cross-claim brought by The Galleria Property Owners Association, Inc. against Jerry Fozzard.

The Court **ORDERS** all parties that have **brought** any claim, counterclaim, or crossclaim in this litigation to **FILE** a status report **on or before January 2, 2023**, if (1) any claim, counterclaim, or crossclaim that they have brought remains pending and (2) they intend to pursue the claim, counterclaim, or crossclaim. Any remaining pending claim, counterclaim, or crossclaim to which no status report is filed will be dismissed under Federal Rule of Civil Procedure 41(b).

SO ORDERED on December 16, 2022.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT